UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GARY W. MUFFLEY, REGIONAL DIRECTOR,
NINTH REGION, NATIONAL LABOR RELATIONS BOARD             PLAINTIFF

v.                                              CIVIL ACTION NO. 3:12CV-458-S

VOITH INDUSTRIAL SERVICES, INC., et al.                   DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the court for consideration of the following motions:

1. Petitioner of Regional Director Gary W. Muffley ("Director") for interim injunctive relief pending the outcome of proceedings before the National Labor Relations Board ("NLRB") (DN 1) in conjunction with the Director's amendment to the petition for interim injunctive relief (DN 7).

2. Motion of the Director for the court to hear the petition on the administrative law judge's hearing transcript to date and exhibits, supplemented, if necessary, by affidavit evidence (DN 8).

3. Motion of the Director to expedite proceedings (DN 9).

The Director of the NLRB is presently litigating claims of unfair labor practices before the NLRB administrative body on behalf of the General Drivers, Warehousemen & Helpers, Local Union 89, affiliated with the International Brotherhood of Teamsters ("Teamsters"). The Director has filed this petition seeking an interim order of relief from this court pursuant to Section 10(j) of the National Labor Relations Act, as amended, 29 U.S.C. § 160(j), "[t]he primary purpose of which was 'to give the Board a means of preserving the status quo pending the completion of its regular procedures.' [citations omitted]. The status quo referred to in [*Gottfried v.*] *Frankel* [818 F.2d 485,

492 (6th Cir. 1987)] is that which existed *before* the charged unfair labor practices took place..." *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 (6th Cir. 1988). The court in *Nixon Detroit* noted that "section 10(j) proceedings are merely ancillary to unfair labor practice proceedings to be conducted by the Board, that "district courts in their analysis under 10(j) are *not* to adjudicate the merits of the unfair labor practice case," and warned that "[t]he district court must be careful that the relief granted is not simply functioning as a substitute for the exercise of the Board's power." *Nixon Detroit*, 859 F.2d at 28, 30, *quoting Frankel*, 818 F.2d at 492, 494.

> Before the district court may issue a temporary injunction under section 10(j), the court must make two findings. First, the court must find "reasonable cause" to believe that the unfair labor practices alleged have occurred. [*Levine v.*] *C & W Mining*, 601 F.2d [432,] at 435 [(6th Cir. 1979)]. Second, if the district court finds reasonable cause to believe the Board's allegations, the court must then determine whether injunctive relief is "just and proper." *Id.* If the district court answers in the negative to either of these inquiries then the petition must be denied.

*Nixon Detroit*, 859 F.2d at 29.

The defendants herein, Voith Industrial Services, Inc. ("Voith"), the United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, and the United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 862, AFL-CIO (collectively "UAW"), have answered, but have not yet responded to the petition for injunctive relief.

The Director seeks injunctive relief on an expedited schedule and a limited record (DNs 8, 9), urging that delay is tantamount to denial of the relief sought. The defendants, on the other hand, object to an expedited schedule, urging that they should be afforded an opportunity to present their case to the administrative body, and be permitted to file their briefs with citations to the transcript of proceedings (Dns 14, 18). The court ordered that the parties meet and confer in an attempt to

reach an agreed briefing schedule. The parties were unable to agree. *See* DN 17, *Notice of Failure of Parties to Reach Agreement;* DN 19, *Response to Notice of Failure of Parties to Reach Agreement*).

The court has since received a transcript of a portion of the proceedings, with the remainder expected to follow. The Director has filed a memorandum of points and authorities (DN 1) and an amendment to the petition including a supplemental memorandum and a proposed order for a hearing requiring the defendants to show cause why injunctive relief should not issue. (DN 7).

After careful review of the Director's petition and amendment, the court concludes that neither further briefing nor a show cause hearing is necessary to the disposition of this matter. For the reasons stated herein, we conclude that entry of interim injunctive relief would not be just and proper and the petition must be denied.

The following events, as related by the Director, led to the filing of the complaints with the NLRB and subsequent petition before this court for injunctive relief.[1]

Ford Motor Company ("Ford") operates a production facility in Louisville, Kentucky. Ford's production employees are represented by the UAW. Since the early 1950s, the Teamsters have represented the "yard" employees at the Ford facility; the yard employees are responsible for transporting the finished vehicles from the assembly plant to the staging area where the vehicles are eventually transported by railcars or car haulers.

During this time, several contractors have performed the yard work, always agreeing, in the past, to hire its predecessor's employees. In December 2010, Ford ceased production operations and

---

[1] In this opinion, the court finds no facts. We simply relate facts as propounded by the Commissioner in order to give context to the request for relief. These "facts" are taken directly from the Summary of Underlying Facts found in the Memorandum of Points and Authorities in Support of the Petition for Injunction, DN 1-2, pp. 4-7, unless otherwise noted.

- 3 -

retooled the facility in preparation for production of the Ford Escape model vehicle. From February 2009 until the cessation of production in December 2010, the vehicle processing work was performed by 17 full-time employees of Auto Handling, Inc., a subsidiary of Jack Cooper Transport Co., Inc. ("Cooper Transport"), under a contract with Ford. (Identification of the employer and number of employees taken from Voith's Mem. in Opp. to Mo. to Exp., DN 18, at pg. 3).

Cooper Transport is a signatory to the Teamsters' National Master Automobile Transporters Agreement, Central and Southern Area Supplemental Agreements, and its Local Rider Agreement, effective June 1, 2008 to May 31, 2011. When Ford ceased production, Auto Handling's contract with Ford terminated, and its employees received a WARN Act notice and were laid off indefinitely.[2,3] (Information regarding termination of employees taken from Voith's Mem. in Opp. to Exp., DN 18, at p. 3). Cooper Transport laid off its remaining employees leaving 166 yard employees on its seniority list.

Voith Industrial Services, Inc. ("Voith") provides cleaning, transportation and logistic services to various customers in the automobile manufacturing industry. Since 2008, Voith has had

---

[2]

While neither the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.*, ("WARN") itself nor its limited legislative history articulate the purpose of the legislation, federal regulations define WARN's purpose as follows:

2. (a) *Purpose of WARN.* The Worker Adjustment and Retraining Notification Act ... provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market. WARN also provides for notice to State dislocated worker units so that dislocated worker assistance can be promptly provided. 20 C.F.R. § 639.1.

[3] Voith urges that, with the termination of the contract with Ford, Auto Handling's employees employees were laid off indefinitely, with no reasonable expectation of recall to their former jobs. The Director contends that new yard work contractors always agreed to hire the predecessor's employees. This court will not wade into the waters concerning whether or not there was an "expectation of recall," or whether such expectation, if it existed, was "reasonable." That point is immaterial to this court's decision on interim injunctive relief.

a contract with Ford to provide cleaning services at the Louisville, Kentucky facility. These employees have been represented by respondent UAW. Voith maintained a crew of cleaning employees throughout the retooling of the Ford facility.

On September 11, 2011, Voith submitted its annual bid for the cleaning work, listing the need for 30 cleaning employees for that operation. On November 1, 2011, Voith submitted another bid for the cleaning work projecting to increase the number of its cleaning employees starting in January 2012.

In the fall of 2011, Ford began soliciting bids for the yard work. On October 21, 2011, Voith submitted its bid for the yard work offering to perform the yard work with as few as 84 employees. In its cover letter to Ford, respondent Voith stated, in part, that, "Voith has a national labor contract with the UAW for all Ford related sites. Our hourly employees will be UAW employees."

UAW also submitted a bid for the work that stated that, "the UAW and Ford Motor Company feel the Shuttle/Yard Management Operations should be done by UAW/Ford employees and kept within the plant. We have currently taken over several staging operations already and want to expand and take full control of our own shipping Yard." In January 2012, UAW announced at local meetings and on their website that applications for Voith's yard work were available and had to be submitted by January 20. During this time, a UAW committeeman was actively soliciting applicants for the yard work. On January 31, Voith started phone screening and interviewing potential employees based on the applications it already had on file for its cleaning positions. However, none of these applications indicated that the individuals were applying for yard work. In addition, Voith did not advertise for workers or make any attempt to contact Cooper Transport or any of the former yard employees. On February 10, at Ford's request, the Teamsters' representatives met with Ford

officials in Detroit, Michigan. During this meeting, Ford officials advised the Teamsters that respondent Voith would be awarded the yard work.

The Ford officials also stated that respondent Voith's employees would be in the yard on Monday, February 13, and either that the employees were going to be represented by respondent UAW or that respondent UAW already represented respondent Voith's employees. On February 12, the Teamsters' officials advised the former Cooper Transport employees to complete respondent Voith's applications for yard work employment and fax them to respondent Voith's Cincinnati, Ohio office.

On February 13, UAW advised the Teamsters that respondent Voith had been awarded the yard work and that those jobs would be posted for bid inside the plant. Voith was notified by Ford, via email, on February 13 that it had been awarded the first portion of the yard work. Immediately, Voith posted these yard job positions for bid among its cleaning employees. The yard jobs were posted for 7 days and awarded to 11 janitors.

The Teamsters faxed a letter on February 14, to respondent Voith demanding recognition, and attaching a seniority list of 166 employees with their contact information and urging that the former employees be hired. Voith never responded to the Teamsters' letter. The Teamsters also began faxing to Voith the former Cooper Transport employees' applications for the yard work. Between February 14 and 17, the Teamsters submitted 32 applications to Voith. By March 7, an additional 52 applications from the former employees were submitted. Voith claims that on February 17, it hired 50 yard employees: the 11 janitors who had successfully bid on the work and 39 other hires who were selected from the applications Voith "already had on file." Voith asserts that it considered all applicants based on the order in which the applications were received or the date of

application and thus the initial 32 Teamsters applications were not considered at this time. On February 20 and 21, during orientation meetings, UAW representatives were provided access to Voith's employees and obtained signed membership cards and dues check off authorizations from all employees who were allegedly hired for yard work. While this was occurring, an official of Voith involved in the interviewing of the new yard employees falsely advised the Teamsters that Voith was only taking applications from people at the plant and that he was only involved in hiring housekeeping employees.

UAW demanded recognition from respondent Voith on February 22. Voith agreed to a neutral card check of respondent UAW membership cards which was conducted the same day. Later that day, Voith sent letters to UAW representatives advising of its recognition of UAW for yard work pursuant to the card check. Voith also informed UAW that the new workforce consisted of existing UAW-represented janitors/paint employees, probationary employees and newly hired employees and that it would set initial terms. On February 28, 2012, the Teamsters filed its first charges against Voith and UAW with Region 9 of the Board.

Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), authorizes the Director to seek interim injunctive relief, where appropriate, to preserve the status quo pending the outcome of administrative proceedings brought before the NLRB to address allegations of unfair labor practices. As stated earlier, in determining whether to issue injunctive relief,

> the district court must make two findings. First, the court must find "reasonable cause" to believe that the unfair labor practices alleged have occurred. Second, if the district court finds reasonable cause to believe the Board's allegations, the court must then determine whether injunctive relief is "just and proper." If the court answers in the negative to either of these inquiries then the petition must be denied.

*Nixon Detroit*, 859 F.2d at 29.

- 8 -

Even assuming that the Director has met the relatively insubstantial burden[4] to establish reasonable cause, we conclude that the Director's petition falters on the "just and proper" prong of the test. In order to determine whether injunctive relief would be just and proper, the court must ascertain what was the *status quo* before the charged unfair labor practices occurred. *Nixon Detroit*, 859 F.2d at 30.

The purported unfair labor practices are arguably alleged to have occurred, by the Director's own account, on or about September 11, 2011 and November 1, 2011 when Voith submitted bids for annual cleaning work. (DN 1-2, p. 5). Also, at some unspecified time in the Fall of 2011, UAW submitted a bid for the yard work. *Id.*[5] *Gottfried*, *supra*., notes that the *status quo* is that which existed *before* the charged unfair labor practices are alleged to have taken place. The Auto Handling employees have remained on indefinite layoff since December of 2010 when the Ford plant shut down and their contract terminated. There can be no dispute that the *status quo* of indefinite layoff remains at the current time.

Rather than seek a return to the *status quo,* the Director seeks affirmative injunctive relief to right the perceived wrongs in (1) failing to consider and/or employ the Auto Handling employees for yard work, and (2) failing to recognize the Teamsters, along with other alleged unfair labor practices which flow from these. The court is forbidden from usurping the power of the NLRB by taking such action.

---

[4]*Nixon Detroit*, 859 F.2d at 29, *citing, Frankel*, 818 F.2d at 493.

[5]Curiously, the Director states in his reply brief to the motion to expedite (DN 20), that the "unfair labor practices in this matter actually began in 2012 and have continued throughout the year up to the present." The court is at a loss to reconcile this statement with the factual allegations in his memorandum of points and authorities which seems to suggest that there was a concerted effort to thwart the Teamsters presence as early as the Fall of 2011.

We note that the Director failed to include in his Memorandum of Points and Authorities the salient point that Auto Handling's contract with Ford terminated when the Ford plant shut down in December, 2010; resulting in indefinite layoff of the 17 yard workers. Rather, he refers to the December 2010 closing for retooling as a "temporary cessation of production," but does state that when Ford ceased production, Auto handling laid off the employees. (DN 1-2, p. 5).

Finally, while the Director states that "the courts–including the Sixth Circuit–have recognized this pressing need for interim relief where a successor employer improperly refuses to bargain with the incumbent union," (DN 1-2, p. 19), the cases cited (DN 1-2, p. 19, fn. 10) are inapposite. None of the cases involved a district court making a decision in the first instance, as we are asked to do here. *Frye ex rel. NLRB v. Specialty Envelope, Inc.*, 10 F.3d 1221 (6th Cir. 1993) and *Small ex rel. NLRB v. Avanti Health Sys., LLC*, 661 F.3d 1180 (9th Cir. 2011) both involved employees in the jobs for which they were either rehired or in which they remained after acquisition. Injunctive relief related to the refusal to recognize the employees' chosen union. The Director in the case at bar seeks to place Teamsters in interim positions of employment and require that the Teamsters be recognized. As other employees were hired into the positions and the UAW has been recognized for these employees, this matter is wholly unlike *Frye* or *Small*.

The Director requests, improperly, that this court unseat workers and the UAW prior to any adjudication of the complaints by the NLRB. Thus the cases of *Bloedorn ex rel. NLRB v. Francisco Foods, Inc.*, 863 F.2d 670 (9th Cir. 1988) and *Scott ex rel. NLRB v. El Farra Enter., Inc.*, 863 F.2d 670 (9th Cir. 1988) are distinguishable, as they both involved interim injunctive relief considered *after* securing a favorable Board ruling.

For the reasons set forth herein, the petition for interim injunctive relief will be denied and dismissed. The motion to expedite proceedings and for the court to hear the matter on limited transcripts will be denied as moot. A separate order will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**